Robert J. Gralewski, Jr. (CSB #196410)
Fatima G. Brizuela
**KIRBY McINERNEY LLP**
600 B Street, Suite 1900
San Diego, CA 92101
Tel: (619) 398-4340
bgralewski@kmllp.com
fbrizuela@kmllp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSES OLIVA and DAVID CLAASSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HERTZ CORPORATION,<br><br>Defendant. | Case No.  **'17 CV 1083 BAS NLS**<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE CASE

1.      The Hertz Corporation ("Hertz") breaches its Gold Plus Program Terms and Conditions ("Hertz Terms") with Gold Plus members and defrauds Gold Plus members by charging them excessive administrative fees (sometimes described as violation-handling fees) each time they pass through automated toll booths without paying the toll. Hertz's Terms explain that Gold Plus members must "reimburse Hertz for all its related collection and other expenses, including an administrative fee related to the cost of

collection or to the cost of providing information about [renters] to a court or governmental agency in connection with any parking or traffic violations." Hertz's Terms do not allow Hertz to charge Gold Plus members administrative fees exceeding the amount needed to reimburse Hertz for the expenses it incurs in collecting unpaid tolls.

2.    The cost Hertz actually incurs relating to the collection of unpaid tolls is only pennies per transaction, far less than the $30 fee that Hertz charges its Gold Plus members for each unpaid toll.

3.    Plaintiff Moses Oliva paid Hertz a $30 administrative fee for an unpaid toll, an amount that grossly exceeded Hertz's reimbursement for all its related collection and other expenses. To recover the excess portion of this payment, Oliva brings this class action on behalf of himself and similarly situated Gold Plus members relating to their rentals after their initial Gold Plus rental.

4.    Plaintiff David Claassen paid Hertz a $30 administrative fee for an unpaid toll, an amount that grossly exceeded Hertz's reimbursement for all its related collection and other expenses. To recover the excess portion of this payment, Claassen brings this class action on behalf of himself and similarly situated Gold Plus members relating to their rentals after their initial Gold Plus rental.

## JURISDICTION AND VENUE

5.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d). The amount in controversy exceeds $5 million, exclusive of interest and costs, and this is a class action where Plaintiffs and class members are citizens of states different from Hertz.

6.    This Court has personal jurisdiction over Hertz because Hertz conducts significant business in California and in this district.

7.    Venue is proper in this district under 28 U.S.C. § 1391 because Hertz resides here (in that Hertz's contacts in this district would be sufficient to subject Hertz to

**CLASS ACTION COMPLAINT**

personal jurisdiction if this district were a separate state), conducts business here, and is subject to this court's personal jurisdiction with respect to the civil action in question. Indeed, with nineteen Hertz rental locations, this district has the most rental locations of almost any district in the country. *See* https://www.hertz.com/rentacar/location#cities.

## PARTIES

8.     Moses Oliva resides in New Jersey.  He rented from Hertz in Southern California, and Hertz charged his credit card a $30 administrative fee for an unpaid toll.

9.     David Claassen resides in Georgia.  He rented from Hertz in Southern California, and Hertz charged his credit card a $30 administrative fee for an unpaid toll.

10.     Hertz, a subsidiary of Hertz Global Holdings, Inc., is a Delaware corporation with its principal place of business in Florida.  Hertz is the world's largest airport general-use car-rental company with more than 2,900 airport locations, including 1,600 in the United States.  During the class period, Hertz rented cars to the public on its own website, www.hertz.com, through third-party websites, and over the phone.

## FACTUAL ALLEGATIONS

I.     **Electronic toll collection.**

  A.     **How electronic toll collection systems work.**

11.     Electronic toll collection ("ETC") allows motorists to pay road tolls automatically without stopping.  A small electronic device known as a transponder is registered with an ETC system and linked to an account corresponding to a vehicle's license registration.  As a vehicle passes through an electronic toll lane, the transponder identifies the vehicle to the ETC system.  The ETC system records the toll payment and debits the corresponding account.

12.     ETC lanes offer many advantages as an alternative to cash toll lanes.  They improve traffic flow, reduce drivers' time, reduce congestion and pollution, improve

**CLASS ACTION COMPLAINT**

fuel economy, improve highway safety, and reduce toll transaction costs.  These benefits have been widely recognized.  A 2007 study by the Center for Transportation Research titled "Toll Collection Technology and Best Practices" found ETC to be the preferred method for highway toll collection. Given ETC's advantages, many toll roads, bridges, and tunnels now include ETC lanes, and a growing number of them have eliminated cash lanes altogether, using ETC as the exclusive toll-collection method.

### B.    Hertz's PlatePass ETC service.

13.    Hertz offers nationally and promotes on its website, in written literature, and elsewhere an ETC service called PlatePass.  PlatePass operates as a transponder that allows customers to use many ETC toll lanes throughout the United States when driving a Hertz rental car.  Hertz rental cars are pre-equipped with PlatePass, which, when activated, automatically pays electronic tolls and charges these tolls to customers' credit cards.

14.    Hertz touts PlatePass as a unique toll-payment solution, affording convenience to its customers by paying tolls electronically when a customer does not bring a personal transponder into the rental car.  Often, PlatePass is the only means by which to pay tolls on exclusive ETC road, unless the customer carries a personal transponder.

15.    PlatePass is a division of American Traffic Solutions, Inc. ("ATS").  ATS administers ETC services for major toll roads throughout the country and worldwide. Sometime after November 2012, Hertz became ATS's largest domestic car-rental customer.

16.    When a Hertz customer uses PlatePass to pay a toll, the ETC system recognizes the rental car either by a transponder or by the car's license-plate number. PlatePass then charges the Hertz customer's credit card for the toll.

17.    In addition to charging customers for any tolls paid using PlatePass, Hertz assesses a PlatePass flat fee of $4.95 for each rental day, regardless of how many tolls, if

4
**CLASS ACTION COMPLAINT**

any, the renter pays, with a cap of $24.95 per rental.

18. But despite PlatePass's expansive coverage, certain cashless toll roads do not accept PlatePass. Nor do these toll roads recognize the transponders used by traveling motorists, such as EZPass or SunPass.

19. Instead, these toll roads exclusively use local ETC systems. The local ETC system in place in parts of California is called FasTrak. This means that certain California automated toll roads only recognize transponders that are registered to FasTrak.

20. As a result, Hertz renters from around the country and around the world who do not subscribe to FasTrak (or to local ETC systems in other markets) are naturally and reasonably unaware that Hertz's PlatePass transponders will not pay their tolls when renters use these transponders on cashless toll roads in parts of California. Renters do not know this because Hertz never informs them that PlatePass does not work on toll roads in parts of California.

21. Hertz also fails to inform renters that the only way to avoid toll violations on parts of California toll roads is to register for FasTrak or to go online with their rental car's license number and pay a toll within a certain number of days after they incur their fines.

## II.    Plaintiffs' Gold Plus enrollments and rentals.

### A.    Plaintiffs' Gold Plus membership enrollments.

22. Plaintiffs enrolled in Hertz's Gold Plus program on Hertz's website, www.hertz.com. They completed an enrollment form that required them to provide personal information, including their driver's license and credit card information, to identify their vehicle preferences, and to select any desired optional insurance or other ancillary services that Hertz offers.

23. After entering this information, Plaintiffs adopted an electronic signature and clicked an "I Agree" button, acknowledging that they had "received and agree[d] to

5

**CLASS ACTION COMPLAINT**

Hertz's Gold Plus Program Terms and Conditions [i.e., Hertz's Terms] of [their] enrollment in Hertz Gold Plus Rewards, including the elections appearing on this enrollment form."

**B.    Plaintiffs' rental-car reservations.**

24.    Plaintiffs reserved their cars online. They logged onto www.hertz.com, where they specified car pick-up and return locations and times, and chose from a list of available cars.

25.    Hertz's website listed "Rental Qualifications and Requirements," which enumerated several "Charges" that a Gold Plus member could be required to pay as part of a car rental, including PlatePass charges. Absent from this list was any mention of an administrative fee.

26.    Plaintiffs proceeded to a webpage with the heading "Review & Book." This webpage contained a link to the charges described in the previous paragraph. Still absent was any mention of an administrative fee.

27.    To complete their reservations, Plaintiffs clicked on a "Submit" prompt, which Hertz's website instructed would confirm that they understood and accepted Hertz's Rental Qualification and Requirements and Hertz's Terms.

**C.    Plaintiffs' rental-car pickups.**

28.    On or about November 25, 2014, Plaintiff Oliva, as an existing Gold Plus member who was not making his initial Gold Plus rental, reserved a car for pick up at Hertz's John Wayne Airport location in Santa Ana, California.

29.    On or about May 2016, Plaintiff Claassen, as an existing Gold Plus member who was not making his initial Gold Plus rental, reserved a car for pick up at Hertz's Los Angeles International Airport location ("LAX").

30.    Upon arrival at their respective airports, Plaintiffs proceeded directly to the stalls where their rental cars awaited with the keys inside.

31.    They commenced their rentals by taking possession of their cars. Plaintiffs

**CLASS ACTION COMPLAINT**

drove toward the airports' exit gates, where they each joined a queue of cars waiting to leave. When Plaintiffs reached the front of the line, an agent handed each, through their driver-side window, a multipage, folded document called a "Rental Record." With drivers behind them waiting to exit and with rows of metal spikes before them preventing them from driving anywhere but out, Plaintiffs left the rental car lots.

32. During Plaintiff Oliva's rental, he drove through a fully automated toll plaza on Highway 73, while driving to San Diego. This toll plaza recognizes only FasTrak transponders. Oliva did not have a FasTrak transponder, and Hertz never told him to get one. Therefore, he could not pay the toll as he passed through it.

33. During his rental, Plaintiff Claassen drove through a fully automated toll plaza near LAX. This toll plaza recognizes only FasTrak transponders. Claassen did not have a FasTrak transponder, and Hertz never told him to get one. Therefore, he could not pay the toll as he passed through it.

## III. Plaintiffs' enrollment in Hertz's Gold Plus Rewards Program.

34. Hertz's Terms control Plaintiffs' relationships with Hertz. When Gold Plus members rent after their first time, Hertz neither gives them a Rental Agreement nor requires them to sign a signature pad agreeing to a Rental Agreement's terms. (A Rental Agreement is the gold, black, and white multifold jacket on which the counter agent lists a rental car's stall number.)

35. Paragraph 13 of Part II.B of Hertz's Terms provides that Hertz may charge an administrative fee for toll-collection costs:

> You will be responsible for and pay all parking or traffic violation fees, fines and penalties, all towing, storage and impoundment fees, and all tolls charged to the Car, arising out of use, possession or operation of the Car by You or with Your permission. You agree to pay same and indemnify and hold Hertz harmless if Hertz pays or is required to pay same. *You also agree to reimburse Hertz for all its related collection and*

**CLASS ACTION COMPLAINT**

> *other expenses, including an administrative fee related to the cost of collection or to the cost of providing information about You to a court or governmental agency in connection with any parking or traffic violations.*

(Emphasis added.)

36. Of the documents described in Hertz's Terms that comprised Plaintiffs' rental agreements, only Hertz's Rental Record, which Hertz provided to Plaintiffs only after their rentals had commenced (*see* supra ¶ 31)—meaning Hertz's Rental Record was not part of Plaintiffs' contracts with Hertz—purported to notify them that Southern California toll roads did not accept PlatePass and that Hertz would charge them a $30 administrative fee if they traveled those toll roads without the proper (yet previously undisclosed and undescribed) transponders.

37. Buried in Plaintiffs' Rental Records was the following language, which described for the first time (and for Southern California tolls) Hertz's $30 administrative fee:

> NOTE: Certain toll roads do not accept cash. If you travel on such a toll road without a personal transponder that can be used on the toll road, you will be required to use PlatePass and be billed automatically as outlined below, or incur toll charges or violations for which you will be responsible. *For toll roads in Southern California that do not accept PlatePass, you will also be charged an administrative fee of $30.*

(Emphasis added.)

38. As well as being unenforceable, the preceding paragraph's language is misleading because it suggests a one-time-only charge to renters who travel toll roads that do not accept PlatePass.

39. No one at Hertz asked Plaintiffs to sign—and they did not sign—the Rental Records that they received after their rentals had commenced. Hertz's Rental Record

**CLASS ACTION COMPLAINT**

instead states at the bottom of its last page: "GOLD-SIGNATURE ON FILE."

40.    As Gold Plus members, Plaintiffs provided Hertz an electronic signature when they enrolled in the Hertz Gold Plus program.    But nothing in Hertz's Terms applied Plaintiffs' electronic signatures to Rental Records.    And Plaintiffs did not agree to Hertz's Rental Records, which Hertz only provided them with after their rentals had commenced.

41.    With respect to Hertz's Rental Agreement, which Hertz never provided Plaintiffs, even if Plaintiffs' electronic signatures enforced Hertz's Rental Agreement in perpetuity, Hertz's Terms explain that "in the case of a rental agreement, the preprinted general terms and conditions section," which is where Hertz's administrative fee appears, are "exclud[ed]." *Id.* at Part I, ¶ 3.    Despite this caveat, Hertz's inapplicable Rental Agreement does not mention Hertz's $30 administrative fee anyway.

## IV.    The breach of Hertz's Terms with Plaintiffs.

### A.    Hertz's demand for a $30 administrative fee.

42.    Shortly after Plaintiffs returned their rental cars to Hertz, Oliva received from Hertz and Claassen received, upon information and belief, from Hertz, a "Notice of Administrative Fee for Rental Car Toll Charge" ("Notices").    These Notices informed Plaintiffs that their rental cars had incurred unpaid toll charges.

43.    Plaintiffs' Notices, which are essentially identical and, upon information and belief, essentially identical to the Notices that Hertz sends and sent other renters who did not pay tolls, first explained that Plaintiffs had not paid their tolls:

> *Oliva's Notice*
> You recently rented a vehicle from The Hertz Corporation. During the term of your rental agreement, a Toll Violation was issued by The Toll Roads Violation Department.
>
> *Claassen's Notice (Claassen's Notice language here and afterward is alleged upon information and belief)*

You recently rented a vehicle from The Hertz Corporation. During the term of your Rental Agreement, one or more toll charges were issued by the Los Angeles County Metropolitan Transportation Authority Violation Department relating to the rental car in your possession at that time.

44.     The representations in Plaintiffs' Notices, that they and Hertz had entered into Rental Agreements, was not true.  Hertz's Gold Plus member rental process ensured that Hertz and Plaintiffs could not have entered into Rental Agreements.

45.     Based on Rental Agreements that never existed, Hertz's Notices explained that Hertz had transferred liability for these tolls from itself, as the car's registered owner, to Plaintiffs:

*Oliva's Notice*

Per your rental contract with The Hertz Corporation, you are responsible for all fines, penalties, and administrative fees related to any and all violations incurred during your rental agreement. You should expect to receive notification in the mail from The Toll Roads Violation Department regarding the cost associated with the violation. The notification will include instructions on filing a dispute or submitting payment. It is your responsibility to resolve the violation with The Toll Roads Violation Department. Violations are issued in the name of the registered owner of the vehicle. The authority issuing the violation has been notified to substitute the name of the registered owner with your name, as you were the renter assigned to the vehicle at the time of the violation. This violation handling process is referred to as a transfer of liability which retains your due process and ability to pay or dispute the violation directly with the issuing authority.

*Claassen's Notice*

As provided in your Rental Agreement with Hertz, you are responsible for all charges, penalties, and fees related to any toll charge(s) incurred during your rental. The toll charge(s) incurred during your rental was issued in the name of the

10

**CLASS ACTION COMPLAINT**

registered owner of the vehicle, which in this case is Hertz. Hertz Processing Services notifies the Los Angeles County Metropolitan Transportation Authority Violation Department to replace Hertz's name with your name as you were the renter assigned to the vehicle at the time of the toll charge(s) were issued. This process of substituting your name is known as a "transfer of liability" because the liability for toll charge(s) was transferred to you.

46.    The Notices continued by describing, in similar language, the simple process that Hertz follows to transfer liability to a customer:

*Oliva's Notice*

The violation handling process (transfer of liability) consists of the following:

　　　1.    Receipt of unpaid violation notice from the city issuing the fine.

　　　2.    Identification of the renter responsible for the violation.

　　　3.    Issuer is supplied with legal documents to transfer liability for the violation to your name.

*Claassen's Notice*

The "transfer of liability" process in your case involves the following steps:

　　　1.    Hertz Processing Services receives notice of the unpaid toll charge(s) from the Los Angeles County Metropolitan Transportation Authority Violation Department.

　　　2.    Hertz Processing Services identifies you as the renter responsible for the toll charge(s).

11

**CLASS ACTION COMPLAINT**

3.      Hertz Processing Services supplies the Los Angeles County Metropolitan Transportation Authority Violation Department with a legal document containing information about you in order to transfer liability for the toll charge(s) to you.

47.     Hertz's Notices then explained that Hertz would charge Plaintiffs $30 for these toll violations:

*Oliva's Notice*
[Hertz's] $30 violation handling fee is separate from the violation amount due to the issuer. . . . It will automatically be charged on the due date above. The charge on your credit card statement will appear as WWWHERTZRENTALFINECOM.

*Claassen's Notice*
 [You] will be charged for the administrative fee . . . .
 The charge on your credit card statement will appear as WWW.HERTZRENTALFINE.COM or American Traffic Solutions, Inc. . . . The $30.00 administrative fee reflected on this notice is separate from the amount due to the Los Angeles County Metropolitan Transportation Authority Violation Department.

48.     Hertz's Notices described no other administrative action that Hertz took to justify its $30 fees.

49.     Hertz's Notices added that unless Plaintiffs voluntarily paid these fees, Hertz would automatically charge their credit cards, again falsely representing that an agreement existed that required payment:

*Oliva's Notice*
If you wish to charge the balance due for the handling fee to the credit card on file with The Hertz Corporation ending [XXXX], you do not have to take any action.

*Claassen's Notice*

12

**CLASS ACTION COMPLAINT**

The Rental Agreement you signed specifically authorized this fee.

50.     For further explanation, Hertz's Notices referred Plaintiffs to WWW.HERTZRENTALFINE.COM.   Consistent with Hertz's Terms and Conditions, this website explains (and upon information and belief, explained during the class period) that "[a]n administration fee *related to the cost of collection, and/or the cost of providing information about you* to a court or governmental agency has also been billed." (Emphasis added.)

51.     Shortly after Plaintiffs received their Notices, Hertz charged each of their credit cards to pay these $30 fees.   Plaintiffs paid these fees when they paid their respective credit card bills.

**B.      Hertz illegally charged Plaintiffs a $30 administrative fee to generate a profit, not to reimburse itself for all its collection and other expenses related to the cost of collection or to the cost or providing information about Plaintiffs to a court or governmental agency in connection with Plaintiffs' parking or traffic violations.**

52.     As provided in Hertz's Terms, Plaintiffs "agree[d] to reimburse Hertz for all its related collection and other expenses, including an administrative fee related to the cost of collection or to the cost of providing information about [them] to a court or governmental agency in connection with any parking or traffic violations."   The plain and unambiguous meaning of this language provides that Plaintiffs were obligated only to reimburse Hertz for costs it incurred related to toll collection, not to enhance Hertz's profits.

53.     In violation of Hertz's Terms, Hertz's $30 administrative fee far exceeded the nominal cost that Hertz incurred when transferring toll liability to Plaintiffs.

54.     Instead of Hertz limiting its administrative fee to the pennies necessary to reimburse the costs that it actually incurred, as Hertz's Terms required, Hertz charged Plaintiffs an excessive fee to enhance its profits at their expense.   In this manner, Hertz breached its promises to Plaintiffs that it would only charge them that required to make

**CLASS ACTION COMPLAINT**

Hertz whole, not to secretly pad Hertz's bottom line.

55.   Because Plaintiffs have not yet been able to obtain the Toll Roads, Los Angeles County Metropolitan Transportation Authority, or ATS documents from Hertz, which describe Hertz's arrangement with the Toll Roads and Los Angeles County Metropolitan Transportation Authority, Plaintiffs allege Hertz's minimal transfer-of-liability costs on information and belief based on costs incurred by its subsidiary Dollar Rent A Car ("Dollar").

56.   Plaintiffs are informed and believe that Dollar's comparable agreements and transactions with the Florida Turnpike Enterprise ("FTE") and ATS are substantially similar to Hertz's agreements and transactions with the Toll Roads, the Los Angeles County Metropolitan Transportation Authority, and ATS.

57.   The FTE's agreement with Dollar and ATS and other related documents show that the FTE charges ATS only $0.06 per toll incurred and 8% of the gross monthly tolls incurred for administering bypassed electronic tolls in Florida.

58.   For example, assuming Dollar rented 1,000 cars in Florida over the course of one month and each car incurred four $1.00 toll charges, the administration cost would be $560. Since Dollar charged its customers $15 per unpaid toll (only half of what Hertz charges), Dollar would collect $60,000 from its customers. Thus, Dollar would reap revenue that is 107 times the actual administration charges imposed by the FTE.

59.   In addition to Hertz's transfer-of-liability costs, which comprise only a miniscule amount of its $30 fee, Hertz charges customers for using PlatePass.  For this service, which is administered by ATS, Hertz charges a flat fee of $4.95 for each rental day, with a cap of $24.95 per rental, no matter how many tolls Hertz pays.

60.   To exact its $30 administrative fees from Plaintiffs, Hertz breached its contracts with them—Hertz's Terms—and engaged in a pattern of deceptive and misleading conduct.

**CLASS ACTION COMPLAINT**

61.     Before Plaintiffs rentals commenced, Hertz did not disclose to Plaintiffs that (i) certain toll highways are fully electronic and have no cash lanes; (ii) PlatePass does not work on these roads; (iii) certain highways, including the highways they traveled, accept only local ETC system transponders, which in this instance required them to register with FasTrak, carry a FasTrak transponder in their rental cars, or register their rental cars' license plates through the FasTrak app; and (iv) unless they used their own FasTrak transponder or registered their rental cars through the FasTrak app, they would violate toll plazas.

62.     Nor did Hertz explain to Plaintiffs before their rentals commenced (i) that it would charge them a $30 fee for every toll violation, which fee far exceeded the amount needed to reimburse Hertz for all its related collection and other expenses, and (ii) that if Plaintiffs drove on an ETC-system-only highway, they could avoid Hertz's $30 per toll violation by promptly contacting the Toll Roads or the Los Angeles County Metropolitan Transportation Authority to pay their tolls before Hertz transferred liability to them.

63.     But Hertz did neither of these things to assist Plaintiffs and Gold Plus members who were in most cases visitors to Southern California and were thus unfamiliar with the local ETC process.  Hertz compounded its deception by promoting PlatePass and describing that it cost $4.95 a day, not to exceed $24.95 for a single rental, while never revealing that PlatePass does not work on Southern California toll roads.

64.     More fundamentally, Hertz affirmatively misrepresented the purpose of its administrative fee by telling Plaintiffs and Gold Plus members that it was charging them only to reimburse administrative expenses that it incurred, when the purpose of Hertz's fee is to generate extra revenue.

65.     Hertz's impetus for illegally imposing its administrative fees is evident in its public statements.  These statements acknowledge the difficulty of raising rental rates in the face of Internet-savvy consumers and fierce price competition:

**CLASS ACTION COMPLAINT**

> The markets in which we operate are highly competitive. We believe that price is one of the primary competitive factors in the car and equipment rental markets and that the Internet has enabled cost-conscious customers, including business travelers, to more easily compare rates available from rental companies. If we try to increase our pricing, our competitors, some of whom may have greater resources and better access to capital than us, may seek to compete aggressively on the basis of pricing.

Hertz 2012 10-K at 45. Generating revenue by charging renters secret fees helps Hertz remain profitable while maintaining lower rental rates.

## **CLASS ACTION ALLEGATIONS**

66.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, seeking equitable, injunctive, and monetary relief under California law on behalf of the following class (the "Class"):

> All persons or entities in the United States who are or were Hertz Gold Plus members who rented Hertz vehicles in California before October 24, 2016 and who Hertz charged one or more $30 administrative fee(s) related to toll violation(s) incurred during their car rental(s) ("the Class").

> The Class excludes: (a) first-time Hertz Gold Plus rentals; (b) Hertz and any entity in which Hertz has a controlling interest; (c) Hertz's employees, officers, directors, agents, representatives, and their family members; (d) class counsel, employees of class counsels' firms, and class counsels' immediate family members; and (e) the presiding judge, any magistrate judge, and their immediate family members.

67.    Plaintiffs are Hertz Gold Plus members who paid Hertz's $30 administrative fees in connection with their after-first-time vehicle rentals. Therefore, they are members of the Class.

**CLASS ACTION COMPLAINT**

68.     Plaintiffs can identify and ascertain all other Class members from Hertz's computerized records.  These records reflect which Gold Plus members Hertz charged its $30 administrative fee.  Thus, the Class is ascertainable.

69.     While Plaintiffs do not know the exact number of the members of the Class as this information is in Hertz's exclusive control, based on the nature of the commerce involved, Plaintiffs believe Class members number in the thousands and are dispersed throughout the United States. Therefore, joinder of all Class members would be impracticable.

70.     Plaintiffs' claims are typical of other Class members' claims because they and Class members paid Hertz's $30 administrative fees.

71.     Common legal or factual questions predominate, including but not limited to:

a.      Whether Hertz entered into Hertz's Terms with Plaintiffs and Class members;

b.      Whether Hertz's Terms contained language permitting Hertz to charge Plaintiffs and Class members only for costs necessary to reimburse Hertz for all its related collection and other expenses, including an administrative fee related to the cost of collection or to the cost of providing information about renters to a court or governmental agency in connection with any parking or traffic violations;

c.      Whether Hertz's Terms did not contain language that Hertz would charge Plaintiffs and Class members a $30 administrative fee for toll violations;

d.      Whether Hertz breached Hertz's Terms with Plaintiffs and Class members by charging $30 administrative fees that were

**CLASS ACTION COMPLAINT**

described nowhere in Hertz's Terms, rather than charging them only reimbursement for Hertz's related collection and other expenses, including an administrative fee related to the cost of collection or to the cost of providing information about renters to a court or governmental agency in connection with any parking or traffic violations;

e.  Whether Hertz acted falsely and misleadingly by charging Plaintiffs and Class members $30 administrative fees that were described nowhere in Hertz's Terms, rather than charging them only reimbursement for Hertz's related collection and other expenses, including an administrative fee related to the cost of collection or to the cost of providing information about renters to a court or governmental agency in connection with any parking or traffic violations;

f.  Whether Plaintiffs and Class members justifiably relied on Hertz's uniform misrepresentations regarding the true nature and purpose of its $30 administrative fee, which fee was not mentioned anywhere in Hertz's Terms and did not constitute Hertz's actual costs relating to the transfer-of-liability process;

g.  Whether Hertz's uniform representation or statement that its $30 administrative fees were to reimburse it for all related collection and other expenses, including administrative fees related to the cost of collection or to the cost of providing information about renters to a court or governmental agency in connection with any parking or traffic violations, was false;

h.  Whether Hertz's contractual statement that it would only charge Plaintiffs and class members reimbursement for Hertz's related

**CLASS ACTION COMPLAINT**

collection and other expenses rather than the $30 administrative fees it actually charged constituted an affirmative misrepresentation in violation of the California consumer-protection laws;

i.      Whether Hertz's uniform failure to charge Plaintiffs and Class members reimbursement for Hertz's related collection and other expenses rather than the $30 administrative fees it actually charged constituted an intentional omission in violation of the California consumer-protection laws;

j.      Whether Hertz's uniform practice of charging Plaintiffs and Class members administrative fees of $30 rather than reimbursement for Hertz's related collection and other expenses constituted an unconscionable commercial practice in violation of the California consumer-protection laws;

k.      Whether Hertz hid its $30 administrative fee from Plaintiffs and Class members;

l.      Whether Plaintiffs or Class members authorized Hertz to charge them $30 administrative fees when all Hertz was contractually allowed to charge them was reimbursement for all its related collection and other expenses;

m.      Whether Hertz's collection of fees under a false pretense violated Hertz's obligation of good faith and fair dealing to Plaintiffs and Class members;

n.      Whether Hertz intentionally and substantially interfered with the Plaintiffs' and Class members' ownership of their credit card and debit card funds by wrongfully taking possession of these funds without permission for its undisclosed and inflated

**CLASS ACTION COMPLAINT**

administrative fee;

o.   Whether Hertz's conduct injured Plaintiffs and Class members;

p.   Whether Plaintiffs and Class members are entitled to damages for injuries they suffered as a result of Hertz's misconduct; and

q.   The proper measure and appropriate formula for determining damages Plaintiffs' and Class members' damages.

72.   Plaintiffs will fairly and adequately represent and protect the interests of the Class, and they have no interests that conflict with, or are antagonistic to Class members' interests. Moreover, their attorneys are experienced and competent in complex class action litigation.

73.   Class certification is the superior procedural method for fairly and efficiently adjudicating Plaintiffs claims because:

a.   Common questions of law or fact predominate over any individual questions that exist within the Class;

b.   Each Class member's damages claim is too small to make individual litigation an economically viable possibility, and few Class members likely have any interest in individually controlling the prosecution of separate actions;

c.   Class treatment is required for optimal deterrence and compensation and for determining the court-awarded reasonable legal fees and expenses;

d.   Despite the relatively small size of each Class member's claim, the aggregate volume of their claims—coupled with the economies of scale inherent in litigating similar claims on a common basis—will enable Class counsel to litigate this case on a cost-effective basis; and

e.   Plaintiffs anticipate no unusual difficulties in this class action's

20

**CLASS ACTION COMPLAINT**

management since all legal and factual questions are common to the class.

## COUNT I

### Breach of Contract

74.    Plaintiffs repeat the allegations set forth above as if fully set forth herein

75.    Plaintiffs contracted with Hertz to join its Gold Plus program, and they joined this program.

76.    Hertz's Terms constitute the parties' Gold Plus program contract. Because Hertz's Terms are the parties' contract, Hertz's Terms control the parties' relationship with respect to Plaintiffs' enrollment or membership in Hertz's Gold Plus program and with respect to Gold Plus program rentals.

77.    Hertz's Terms neither explained nor disclosed to Plaintiffs that Hertz would charge them $30 administrative fees for toll violations incurred on Southern California toll roads during rentals they made with Hertz.

78.    Rather, Hertz's Terms stated only that Plaintiffs were required to "*reimburse* Hertz for all its related collection and other expenses, including an administrative fee *related to* the cost of collection or to the cost of providing information about [them] to a court or governmental agency in connection with any parking or traffic violations." (Emphasis added).

79.    Plaintiffs fully performed and satisfied their obligations under Hertz's Terms.

80.    By charging Plaintiffs a $30 fee that far exceeded the amount necessary to reimburse Hertz for its collection costs and other expenses related to providing information about them to a court or governmental agency in connection with their traffic violation, and because this $30 fee was not mentioned anywhere in Hertz's Terms or in any other documentation that Hertz provided to Plaintiffs, Hertz breached its contract—

**CLASS ACTION COMPLAINT**

that is, Hertz's Terms—with Plaintiffs.

81.     Plaintiffs suffered damages as a direct and proximate cause of Hertz's breach of contract.

## COUNT II

### Breach of Implied Covenant of Good Faith and Fair Dealing

82.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

83.     A valid contract existed between Plaintiffs and Hertz that resulted from Hertz's reservation-and-rental process and that allowed Hertz to charge them reimbursement for Hertz's related collection and other expenses, including an administrative fee related to the cost of collection or to the cost of providing information about renters to a court or governmental agency in connection with any parking or traffic violations.

84.     Plaintiffs fully performed and satisfied their obligations under their contracts.

85.     Hertz breached its implied covenant of good faith and fair dealing and unfairly interfered with Plaintiffs' right to receive the benefits of their contracts by charging Plaintiffs $30 fees that far exceeded the amount necessary to reimburse Hertz for its collection costs and other expenses related to providing information about Plaintiffs to a court or governmental agency in connection with their traffic violations and because Hertz did not mention this $30 fee anywhere in Hertz's Terms.

86.     Hertz's imposition of fictitious and inflated charges violates the covenant of good faith and fair dealing contained in its contract—that is, Hertz's Terms—with Plaintiffs.

87.     Hertz acted in bad faith and breached this covenant by overcharging Plaintiffs and by failing to return overpaid amounts.

88.     Plaintiffs have suffered damages as a direct and proximate cause of Hertz's breach of the implied covenant of good faith and fair dealing.

**CLASS ACTION COMPLAINT**

## COUNT III

### Unlawful Business Practices Under California Business & Professions Code § 17200, et seq.

89.    Plaintiffs repeat the allegations set forth above as if fully set forth herein.

90.    According to California Business and Professions Code § 17200, *et seq.* ("UCL"), it is illegal to engage in any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and to engage in certain acts that are prohibited in the Business and Professions Code.

91.    Hertz violated the "unlawful" prong of the UCL by not disclosing (an omission) and by misrepresenting (an affirmative act) the true nature and purpose of its administrative fee associated with toll violations. In particular, Hertz acted unlawfully by failing to disclose that it would charge Plaintiffs a $30 fee that far exceeded the amount required for reimbursement for all of its related collection costs and other expenses or its costs related to providing information about Plaintiffs to a court or governmental agency in connection with any parking or traffic violations. Hertz also acted unlawfully by failing to include or choosing to exclude this $30 fee in its Hertz Terms.

92.    Hertz falsely represented that this $30 fee was the amount needed to defray its actual administrative costs relating to the transfer-of-liability process, which is "Hertz's process for "notif[ying the relevant tollway authority] to replace Hertz's name with [Plaintiffs'] name[s]." Hertz then collected this $30 fee by charging Plaintiffs' credit cards.

93.    Plaintiffs justifiably relied on Hertz's misrepresentations regarding the true nature and purpose of its $30 administrative fee, which fee was not mentioned anywhere in Hertz's Terms and which did not constitute Hertz's actual costs relating to the transfer-of-liability process.

94.    Hertz's illegal and deceptive conduct described above was "unlawful" in that it breached Hertz's contract with Plaintiffs and it violated the CLRA, Cal. Civ. Code

**CLASS ACTION COMPLAINT**

§ 1750 *et seq.*

95.    Hertz's conduct caused substantial injury to Plaintiffs and Class members. Under California Business and Professions Code § 17203, Plaintiffs seek an order enjoining Hertz from engaging in the unlawful practices and acts identified here. Pursuant to § 17203, Plaintiffs also seek equitable monetary relief to preclude Hertz from retaining the money it improperly obtained as a result of its illegal practices and acts.

96.    Plaintiffs also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## COUNT IV

### Unfair Business Practices Under California Business & Professions Code § 17200, et seq.

97.    Plaintiffs repeat the allegations set forth above as if fully set forth herein.

98.    Hertz's acts and practices as described here constitute unfair business acts and practices in violation of the UCL.

99.    Hertz violated the "unfair" prong of the UCL by not disclosing (an omission) and misrepresenting (an affirmative act) the true nature and purpose of its $30 administrative fee that was not mentioned anywhere in Hertz's contract. This fee far exceeded the amount necessary to reimburse Hertz for all of its related collection and other expenses and was not related to Hertz's cost of collection or its cost of providing information about Plaintiffs to a court or governmental agency in connection with any parking or traffic violations.

100.    Instead, Hertz represented that the $30 fees it charged Plaintiffs and Class members were its actual administrative costs relating to the transfer-of-liability process, which is Hertz's process for "notif[ying the relevant tollway authority] to replace Hertz's name with [Plaintiffs'] name[s]," before collecting its $30 administrative fee by charging the Plaintiffs' credit cards.

**CLASS ACTION COMPLAINT**

101.    Plaintiffs justifiably relied on Hertz's material misrepresentations and omissions regarding the true nature and purpose of its $30 administrative fee.

102.    Hertz's conduct was immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiffs and Class members because it cost Plaintiffs and Class members money they were not obligated to pay Hertz for the reasons set forth above. Hertz's practice was also contrary to both, public and legislatively declared policy, and the harm it caused to consumers outweighed its utility.

103.    Hertz's conduct caused substantial injury to Plaintiffs and Class members. Under California Business and Professions Code § 17203, Plaintiffs seek an order enjoining Hertz from engaging in the unlawful practices and acts identified here and awarding Plaintiffs equitable monetary relief to preclude Hertz from retaining all monies improperly obtained by it as a result of those practices and acts.

104.    Plaintiffs also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

105.    As a direct and proximate result of Hertz's unfair, unlawful, and fraudulent conduct, Plaintiffs have suffered monetary loss.

## COUNT V

### Fraudulent Business Practices Under California Business & Professions Code § 17200, et seq.

106.    Plaintiffs repeat the allegations set forth above as if fully set forth herein.

107.    Hertz's acts and practices as described here constitute fraudulent and deceptive business acts and practices in violation of the UCL.

108.    Hertz violated the "fraudulent" prong of the UCL by not disclosing (an omission) and misrepresenting (an affirmative act) the true nature and purpose of its $30 administrative fee that was not mentioned anywhere in Hertz's contract. This fee far exceeded the amount necessary to reimburse Hertz for all of its related collection and

**CLASS ACTION COMPLAINT**

other expenses and was not related to Hertz's cost of collection or its cost of providing information about Plaintiffs to a court or governmental agency in connection with any parking or traffic violations.

109.   Instead, Hertz represented that the $30 fees it charged Plaintiffs and Class members were its actual administrative costs relating to the transfer-of-liability process, which is Hertz's process for "notif[ying the relevant tollway authority] to replace Hertz's name with [Plaintiffs'] name[s]," before collecting its $30 administrative fee by charging the Plaintiffs' credit cards.

110.   Members of the public are likely to, and Plaintiffs did in fact, justifiably rely on Hertz's material misrepresentations and omissions regarding the true nature and purpose of its $30 administrative fee.

111.   Hertz's unfair and unlawful conduct described above was fraudulent and misleading because by its own terms, it left Plaintiffs with the erroneous impression that the $30 administrative fee they were charged represented the actual cost associated with Hertz's "cost of collection or to the cost of providing information about [them] to a court or governmental agency in connection with any parking or traffic violations," and failed to disclose that this was not the actual cost Hertz incurred.   Hertz's practice of withholding any notice to Plaintiffs that they would in fact be billed for costs relating to toll violations beyond those that Hertz actually incurred, is calculated to deceive the public, did in fact, defraud Plaintiffs, and frustrates public policy.

112.   Hertz's conduct caused substantial injury to Plaintiffs and Class members. Under California Business and Professions Code § 17203, Plaintiffs seek an order enjoining Hertz from engaging in the unlawful practices and acts identified here and awarding Plaintiffs equitable monetary relief to preclude Hertz from retaining all monies improperly obtained by it as a result of those practices and acts.

113.   Plaintiffs also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

**CLASS ACTION COMPLAINT**

114.   As a direct and proximate result of Hertz's unfair, unlawful, and fraudulent conduct, Plaintiffs have suffered monetary loss.

## COUNT IV

### Conversion

115.   Plaintiffs repeat the allegations set forth above as if fully set forth herein.

116.   Plaintiffs owned, possessed, or had a right to possess a specific property right in, control over and exclusive claim to their credit-card account and the funds in this account.

117.   Hertz intentionally and substantially interfered with the Plaintiffs' ownership of these funds by wrongfully taking possession of funds from their credit cards without permission for its own undisclosed and inflated administrative fee, sums that are specific and identifiable, and by preventing Plaintiffs from having access to the credit card funds that Hertz wrongly used to pay its administrative fee.

118.   Plaintiffs did not consent to Hertz taking possession of these funds for that purpose.

119.   Plaintiffs were harmed by their loss of these funds, and Hertz's conduct was a substantial factor in causing this harm.

## PRAYER FOR RELIEF

On behalf of themselves and the Class, Plaintiffs request the following relief:

      a.      An order declaring that this action is properly maintainable as a class action, certifying Plaintiffs as class representatives, and designating Plaintiffs' counsel as lead counsel for the Class;

      b.      An order awarding damages to Plaintiffs and Class members for Hertz's breach of contract;

      c.      An order awarding damages to Plaintiffs and Class members for

**CLASS ACTION COMPLAINT**

Hertz's breach of the duty of good faith and fair dealing;

    d.    An order awarding Plaintiffs and Class members compensatory damages, treble damages, attorneys' fees, and costs of suit for Hertz's consumer fraud;

    e.    An order enjoining Hertz from continuing to charge customers administrative fees for its transfer-of-liability process unless Hertz properly discloses these charges;

    f.    An order awarding damages to Plaintiffs and Class members for Hertz's wrongful conversion;

    g.    An order awarding Plaintiffs pre- and post-judgment interest;

    h.    An order awarding the costs of suit; and

    i.    An order providing such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury of all triable issues.

Dated: May 25, 2017           Respectfully submitted,

           *s/Robert J. Gralewski, Jr.*
           Robert J. Gralewski, Jr. (CSB #196410)
           Fatima G. Brizuela
           **KIRBY McINERNEY LLP**
           600 B Street, Suite 1900
           San Diego, CA 92101
           Tel: (619) 398-4340
           bgralewski@kmllp.com
           fbrizuela@kmllp.com

           *Attorneys for Plaintiffs and the Class*

**CLASS ACTION COMPLAINT**