Kenneth K. Lee (CSB #264296)
JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Telephone:  (213) 239-5100
Facsimile:  (213) 239-5199
klee@jenner.com

Jessica Ring Amunson*
Michelle R. Singer*
JENNER & BLOCK LLP
1099 New York Ave. NW, Ste. 900
Washington, DC 20001
Telephone:  (202) 639-6000
Facsimile:  (202) 639-6066
jamunson@jenner.com
msinger@jenner.com

John F. Ward, Jr.*
Daniel J. Weiss*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois  60654
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
jward@jenner.com
dweiss@jenner.com

*Attorneys for Defendant*

**pro hac vice** motion forthcoming

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MOSES OLIVA and DAVID CLAASSEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

THE HERTZ CORPORATION,

Defendant.

Case No. 3:17-cv-01083-BAS-NLS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION**

Date:   August 21, 2017
Judge:  Cynthia Bashant

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................. 2

    A.    Plaintiffs' Allegations. ........................................................... 2

    B.    Hertz's Contract And The Arbitration Provision. ........................... 2

    C.    Plaintiffs' Transactions And Agreement To The Arbitration Provision......... 5

        i.    Moises Olivas ............................................................ 5

        ii.    David Claassen .......................................................... 7

    D.    This Litigation. ................................................................. 8

ARGUMENT ...................................................................................... 8

I.    Any Threshold Question Of Arbitrability Must Be Decided By The Arbitrator. ............................................................................. 9

II.    All Of Plaintiffs' Claims Are Subject To Arbitration. ........................... 11

    A.    A Valid Agreement To Arbitrate Exists Between Each Plaintiff And Hertz. ........................................................................... 12

        i.    Both Plaintiffs Agreed To Arbitrate Via The Gold Agreement and The Rental Records They Accepted In Connection With Their Rentals................................................................... 12

        ii.    Both Plaintiffs Are Bound By The Terms Of The Rental Records They Received In Connection With Their Rentals........................... 14

        iii.    Moises Olivas Directly Executed Two Rental Records Containing The Arbitration Provision. ................................................ 18

    B.    The Arbitration Provision Covers All Of Plaintiffs' Claims. .................. 19

CONCLUSION .................................................................................. 21

1

# <u>TABLE OF AUTHORITIES</u>

2

3

**CASES**

4

*American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013)...................19

5

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ...............................................19

6

7

*Botorff v. Amerco*, No. 2:12-CV-01286-MCE, 2012 WL 6628952 (E.D. Cal. Dec. 19, 2012)...........................................................................................................13

8

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .....................................................10

9

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126 (9th Cir. 2000) ..............................................................................................................................11, 19

10

11

*Cooks v. Hertz Corp.*, No. 3:15-CV-0652-NJR-PMF, 2016 WL 3022403 (S.D. Ill. Apr. 29, 2016) ...............................................................................................11, 18

12

*Cordas v. Uber Techs., Inc.*, No. 16-CV-04065-RS, __ F. Supp. 3d __, 2017 WL 658847 (N.D. Cal. Jan. 5, 2017)..............................................................................11

13

14

*Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051 (S.D. Cal. 2015), *appeal docketed*, No. 15-56799 (9th Cir. Nov. 23, 2015) ..............................................21

15

16

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)..........................................9

17

*Garcia v. Dell, Inc.*, 905 F. Supp. 2d 1174 (S.D. Cal. 2012) ......................................10, 19

18

*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014) .............................19

19

*Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014) ......................8-9

20

*Knatt v. J. C. Penney Corp.*, No. 15-CV-2516 JM (KSC), 2016 WL 1241550 (S.D. Cal. Mar. 30, 2016) ...........................................................................................9

21

22

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) .......................................14

23

*Koffler Electrical Mechanical Apparatus Repair, Inc. v. Wartsila North America, Inc.*, No. C-11-0052 EMC, 2011 WL 1086035 (N.D. Cal. Mar. 24, 2011) ..................................................................................................................13

24

25

26

*Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991 (N.D. Cal. 2012) ..........................................13

27

28

*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*, 89 Cal. App. 4th 1042 (2001) ............................................................................ 18

*Miller v. Time Warner Cable Inc.*, No. 16-CV-00329-CAS-ASX, 2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) ...................................................... 11

*Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016) .............................. 9

*Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011) ...................................................... 9

*Mundi v. Union Security Life Insurance Co.*, 555 F.3d 1042 (9th Cir. 2009) .................... 12

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013) ........................................ 19

*Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279 (9th Cir. 2017) ........................................................................... 15, 16, 17

*Rent-A-Ctr., West, Inc., v. Jackson*, 561 U.S. 63 (2010) ........................................ 10

*Rogers v. Nelson*, No. 16CV955-L (RBB), 2017 WL 1711155 (S.D. Cal. May 3, 2017) ...................................................................................... 17

*Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87 (2013) .................................... 17

*Schmidt v. Samsung Electronics America, Inc.*, No. C16-1725-JCC, 2017 WL 2289035 (W.D. Wash. May 25, 2017) ................................................. 17

*Seaman v. Private Placement Capital Notes II, LLC*, No. 16-CV-00578-BAS-DHB, 2017 WL 1166336 (S.D. Cal. Mar. 29, 2017) ......................... 10-11

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) .................................... 20

*Tuck v. DirecTV*, No. 16-CV-160 JLS KSC, 2016 WL 6698938 (S.D. Cal. Nov. 15, 2016) .................................................................................. 2

*Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*, 497 F. App'x 740 (9th Cir. 2012) .................................................................................. 20

**STATUTES**

9 U.S.C. § 3 ........................................................................................ 8

9 U.S.C. § 4 ........................................................................................ 8

iii

**OTHER AUTHORITIES**

Rule R-7, AAA Commercial Arbitration Rules..................................................................10

Defendant The Hertz Corporation ("Hertz") respectfully submits this Memorandum of Law in Support of its Motion to Compel Arbitration and Dismiss or Stay Action.[1]

## **INTRODUCTION**

In this putative class action, plaintiffs Moises Olivas[2] and David Claassen allege that Hertz charged them an excessive administrative fee in connection with unpaid tolls each of them incurred while traveling on a California toll road using a Hertz rental car.  They further allege that Hertz failed to disclose or misrepresented certain information regarding those administrative fees.  Plaintiffs allege claims for breach of contract, breach of the duty of good faith and fair dealing, violation of the California Unfair Competition Law ("UCL"), and conversion on behalf of themselves and a putative class.

Plaintiffs' claims cannot properly be heard in this Court because plaintiffs have each agreed to arbitrate any dispute of this kind with Hertz.  Each plaintiff has also specifically agreed to delegate all questions of arbitrability to an arbitrator and to waive his right to participate in a class action, either as a class representative or a class member.  Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, this agreement must be enforced, and plaintiffs' lawsuit must be dismissed or, in the alternative, stayed pending arbitration.

---

[1] In the alternative to the instant motion, Hertz is submitting a motion to dismiss the Complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) with respect to Plaintiff David Claassen, and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to both plaintiffs.

[2] According to plaintiffs' counsel, the plaintiff identified in the Complaint as "Moses Oliva" rents cars from Hertz under the name "Moises Olivas," which is his actual name.  Ward Decl. ¶ 2.  Hertz therefore subsequently refers to that plaintiff as Moises Olivas.

1

## BACKGROUND

### A. Plaintiffs' Allegations.

Hertz is a car rental company.  In their Class Action Complaint ("Complaint"), plaintiffs Moises Olivas and David Claassen allege that they rented cars from Hertz and then drove those cars on cashless toll roads that accept payment only by means of a FasTrak transponder or by visiting the toll authority's website.  Compl. ¶¶ 20-21, 28-29.  Plaintiffs did not arrange for payment of their tolls by either method, and therefore each incurred a toll violation.  *Id.* ¶¶ 32-33.  They each allege they each were charged a $30 administrative fee relating to the process of transferring liability for their unpaid tolls from Hertz, the rental cars' registered owner, to each plaintiff.  *Id.* ¶¶ 45, 50.  Plaintiffs further allege that the administrative fee exceeded the amount needed to reimburse Hertz for its expenses, and that Hertz failed to disclose and misrepresented the true nature and purpose of the administrative fee.  *Id.* ¶¶ 61-64.

### B. Hertz's Contract And The Arbitration Provision.

Hertz operates a loyalty program called the Hertz Gold Plus Rewards Program (the "Gold Program").  Schloss Decl. ¶ 2.[3]  Customers enroll in the Gold Program by executing a written agreement (the "Gold Agreement").  *Id.* ¶ 3.  The Gold Agreement expressly

---

[3] "[O]n a motion to compel arbitration, a court may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Tuck v. DirecTV*, No. 16-CV-160 JLS KSC, 2016 WL 6698938, at *2 (S.D. Cal. Nov. 15, 2016) (quotation marks omitted).

2

provides that every Hertz car rental made pursuant to the Gold Program is governed by a contract that includes (1) the written Gold Agreement, which functions as a master agreement governing all Gold Program rentals and (2) terms and conditions set forth in the "Rental Record."  *See id.*, Ex. 1, at 4; *id.* ¶ 5.

As the Gold Agreement explains, a Rental Record is a document that "contains specific terms of that rental."  *Id.*, Ex. 1, at 4.  Hertz provides a customized Rental Record to every Hertz customer at the commencement of every rental.  *Id.* ¶ 6.  The top of the first page of every Rental Record is labeled "Rental Record" or "RR," followed by an identification number.  *Id.* ¶ 6; *see, e.g.*, Zaenger Decl., Ex. 4, at 1.  Each Rental Record includes specific information such as the rental location and rental rate, products purchased, and other terms and conditions applicable to the rental.  Schloss Decl. ¶ 6; *see, e.g.*, Zaenger Decl., Ex. 4.

The Rental Record also includes a line for the customer's signature.  Schloss Decl. ¶ 7.  Customers who are not making Gold Program rentals provide their signatures on the Rental Record by using an electronic pad at the Hertz rental counter.  Schloss Decl. ¶ 8.  For Gold Program rentals, Hertz typically prints the phrase "GOLD – SIGNATURE ON FILE" on the Rental Record's signature line, indicating that the customer has already provided a signature in connection with the Gold Program and therefore has agreed to be bound by the Rental Record.  *Id.* ¶ 9; *see, e.g.*, Zaenger Decl., Ex. 4, at 5.  Further, the Rental Record for Gold Program customers provides:  "By accepting the Car, You acknowledge that You have read, understand, accept, and agree to the above and the Rental

3

Terms." Schloss Decl. ¶ 10; *see, e.g.*, Zaenger Decl., Ex. 4, at 5. That is, by accepting a Hertz rental vehicle, a Gold customer reconfirms that he or she has accepted and agreed to the Rental Record.

Near the beginning of the document, each Rental Record conspicuously provides: "Further information relating to Your rental charges, *and other terms to which You agree*, appear below." Schloss Decl. ¶ 11 (emphasis added); *see, e.g.*, Zaenger Decl., Ex. 4, at 2. One of the "other terms" referenced "below" is a broad agreement to arbitrate disputes with Hertz (the "Arbitration Provision"). Schloss Decl. ¶ 11; *see, e.g.*, Zaenger Decl., Ex. 4, at 4. Hertz has included the Arbitration Provision in every Rental Record since September 2013. Schloss Decl. ¶ 12. It is printed with the heading "**ARBITRATION PROVISION**" typed in bolded and capitalized letters, and provides that customers may "opt out" of arbitration by providing notice to Hertz within 30 days of receipt. Schloss Decl. ¶ 13; *see, e.g.*, Zaenger Decl., Ex. 4 at 4.

The Arbitration Provision provides as follows (in relevant part):

**ARBITRATION PROVISION: THIS AGREEMENT REQUIRES ARBITRATION OR A SMALL CLAIMS COURT CASE ON AN INDIVIDUAL BASIS, RATHER THAN JURY TRIALS OR CLASS ACTIONS. BY ENTERING INTO THIS RENTAL AGREEMENT, YOU AGREE TO THIS ARBITRATION PROVISION.**

Except for claims for property damage, personal injury or death, ANY DISPUTES BETWEEN US MUST BE RESOLVED ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT ALLOWED. YOU AND THE RESPECTIVE HERTZ COMPANY IDENTIFIED ON PAGE ONE OF THIS DOCUMENT (HEREINAFTER "HERTZ") EACH WAIVE THE RIGHT TO A TRIAL BY JURY OR TO

4

PARTICIPATE IN A CLASS ACTION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER.  You and Hertz remain free to bring any issues to the attention of government agencies.

This Arbitration Provision's scope is broad and includes, without limitation, any claims relating to any aspect of the relationship or communications between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory.  It is governed by the Federal Arbitration Act, 9 U.S.C. §§1 et seq.

In any arbitration under this Arbitration Provision, all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision. The arbitration will take place in the county of Your billing address unless agreed otherwise.

The American Arbitration Association ("AAA") will administer any arbitration pursuant to its Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer-Related Disputes (together, the "Rules").  You can obtain the Rules at www.adr.org.

. . .

IF YOU DO NOT WISH TO AGREE TO THIS ARBITRATION PROVISION, YOU MUST NOTIFY US IN WRITING WITHIN 30 DAYS OF YOUR RECEIPT OF THIS AGREEMENT BY EMAILING US AT no.arbitration@hertz.com OR BY MAIL. . . .

*See, e.g.*, Zaenger Decl., Ex. 4, at 4 (bolding and capitalization in original).

### C. Plaintiffs' Transactions And Agreement To The Arbitration Provision.

#### i.  Moises Olivas

Plaintiff Moises Olivas enrolled in the Gold Program in 2006 by providing his electronic signature in order to execute a document accepting the Gold Agreement.  Zaenger Decl. ¶ 3; Compl. ¶¶ 22-23.  Olivas is a frequent Hertz customer who engaged in 47 rental transactions with Hertz between 2010 and 2016.  Zaenger Decl. ¶ 5.  Olivas rented so often

5

from Hertz that he qualified to become a member of Hertz's President's Circle, an elevated rewards tier of the Gold Program whose membership is based on frequency of rentals. Schloss Decl. ¶ 2; *see, e.g.*, Zaenger Decl., Ex. 4, at 1 (showing "President's Circle" membership at top).

Olivas has rented cars from Hertz 14 times since the Arbitration Provision took effect in September 2013.  Zaenger Decl. ¶ 5; Schloss Decl. ¶ 12.  Each time, Olivas was provided with a Rental Record containing the Arbitration Provision.  *See* Schloss Decl. ¶ 12.  During Olivas's November 8, 2014 rental at Hertz's Fort Lauderdale International Airport location, he also hand-executed two separate Rental Records containing the Arbitration Provision. Zaenger Decl. ¶ 6; *id.*, Exs. 1-2.[4]

Approximately two weeks later, on November 25, 2014, Olivas rented a car from Hertz's John Wayne Airport location pursuant to the Gold Program (the "John Wayne Airport rental").  Compl. ¶ 28; Zaenger Decl. ¶ 7.  Olivas received two Rental Records in connection with that rental, each of which contained the Arbitration Provision set out above, and each of which Olivas accepted by operation of the Gold Agreement and under the terms of the Rental Records.  Zaenger Decl. ¶ 7; *id.*, Exs. 3-4.[5]

In sum, Olivas has accepted Rental Records containing the Arbitration Provision a

---

[4] The Rental Records for Olivas's Fort Lauderdale rental differ only in the refueling option Olivas elected.  *See* Zaenger Decl., Ex. 1, at 1; Ex. 2, at 1.

[5] The first Rental Record was issued on November 25, 2014 at 8:41 pm, and the second was issued at 9:30 pm for a different car.  Zaenger Decl., Ex. 3, at 1; Ex. 4, at 1.

total of 16 times – four times before his John Wayne Airport rental, including by direct signature twice; two times in connection with the November 25, 2014 rental at issue in this case; and 10 times thereafter.  *See* Zaenger Decl. ¶¶ 5-7.  Olivas did not opt out of the Arbitration Provision at any point.  Schloss Decl. ¶ 13.

### ii.   David Claassen

Plaintiff David Claassen enrolled in the Gold Program in 2013 by providing his electronic signature in order to execute a document accepting the Gold Agreement.  Zaenger Decl. ¶ 4; Compl. ¶¶ 22-23.[6]

The Complaint alleges that on or about May 2016, Claassen rented a car from Hertz's Los Angeles International Airport ("LAX") location pursuant to the Gold Program (the "LAX rental").  Compl. ¶ 29.  The Complaint misstates the date of the LAX rental, which in fact took place on April 6, 2016.  Zaenger Decl. ¶¶ 9-10; *id.*, Ex. 5.  On that date, Claassen received a Rental Record that contained the Arbitration Provision set out above, and which Claassen accepted by operation of the Gold Agreement and under the terms of the Rental Record.  *Id.* ¶ 10; *id.*, Ex. 5.

In addition to that rental from LAX, Claassen has rented cars from Hertz 12 other times since the Arbitration Provision took effect in September 2013.  Zaenger Decl. ¶ 8;

---

[6] The 2006 Gold Agreement was in effect at the time of Claassen's enrollment in the Gold Program.  Schloss Decl. ¶ 3.  Although the Gold Agreement was updated again in July 2015, there is no material difference between the 2006 terms and the 2015 terms with respect to the provisions at issue.  *See* Schloss Decl., Ex. 2.

Schloss Decl. ¶ 12.  Eleven of those 12 rentals took place before the rental at issue in this case, and one occurred after that rental.  Zaenger Decl. ¶ 8.  Claassen has therefore accepted a total of 13 Rental Records containing the Arbitration Provision.  *Id.* ¶ 8.  Claassen did not opt out of the Arbitration Provision at any time.  Schloss Decl. ¶ 13.

### D. This Litigation.

Pursuant to the Arbitration Provision, plaintiffs expressly agreed that any dispute between them and Hertz (excepting claims for property damage or personal injury) would be resolved in arbitration (or small claims court), and each plaintiff specifically waived any right "to participate in a class action, either as a class representative or class member."  *E.g.*, Zaenger Decl., Ex. 3, at 4; *id.*, Ex. 4, at 4; *id.*, Ex. 5, at 5 (capitalization omitted).  Notwithstanding plaintiffs' agreement to arbitrate "any claim[] relating to any aspect of the relationship or communications between" them and Hertz, however, plaintiffs filed their Complaint in this Court on May 25, 2017.

### ARGUMENT

Under the FAA and binding precedent, the parties' arbitration agreement must be enforced.  When a dispute is subject to arbitration, the FAA mandates that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  Accordingly, a dispute brought prematurely to court, such as this one, must at least be stayed pending arbitration.  *See* 9 U.S.C. § 3.  A court also "may . . . dismiss [the action] outright when . . . the court determines that all of the claims raised in the action are subject to arbitration."  *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d

8

1072, 1073-74 (9th Cir. 2014); *see, e.g.*, *Knatt v. J. C. Penney Corp., Inc.*, No. 15-CV-2516 JM (KSC), 2016 WL 1241550, at *4 (S.D. Cal. Mar. 30, 2016) (compelling arbitration and dismissing case). Pursuant to these mandates, the Court should enter an order compelling arbitration and dismissing, or at a minimum staying, this case.

## I. Any Threshold Question Of Arbitrability Must Be Decided By The Arbitrator.

The threshold question of arbitrability is for the parties to decide, so long as they do so "clearly and unmistakably." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quotation marks omitted). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability" is provided by "an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quotation marks and alterations omitted); *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter.").

In this case, express contractual language unambiguously delegates the question of arbitrability to the arbitrator. Plaintiffs not only agreed to arbitrate all claims against Hertz (except for personal injury and property damage), but also agreed that "all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision." *E.g.*, Zaenger Decl., Ex. 3, at 3; *id.*, Ex. 4, at 4; *id.*, Ex. 5, at 5. This language clearly and unmistakably indicates the parties' intent for an arbitrator to decide the threshold question of arbitrability. *See Mohamed*, 848 F.3d at 1209 (finding that parties expressly intended to delegate question of

9

arbitrability where contract delegated to arbitrator issues regarding "enforceability, revocability or validity of the Arbitration Provision" (quotation marks omitted)); *Garcia v. Dell, Inc.*, 905 F. Supp. 2d 1174, 1178-79 (S.D. Cal. 2012) (enforcing delegation clause stating that issues "including the validity or enforceability of th[e] arbitration provision" were for arbitrator to decide (quotation marks omitted)).  Thus, under the FAA, the parties' agreement to delegate any question of arbitrability must be enforced like any other.  *See Rent-A-Ctr., W., Inc., v. Jackson*, 561 U.S. 63, 68-70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

The parties also agreed that any arbitration must be administered by the American Arbitration Association ("AAA") pursuant to its roles for commercial and consumer-related disputes.  *E.g.*, Zaenger Decl., Ex. 3, at 4; *id.*, Ex. 4, at 4; *id.*, Ex. 5, at 5.  The AAA's rules similarly provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the *existence, scope, or validity* of the arbitration agreement or to the arbitrability of any claim or counterclaim."  Rule R-7, AAA Commercial Arbitration Rules (emphasis added).  It is the rule of this Circuit, as well as "virtually every circuit to have considered the issue," that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quotation marks and alterations omitted); *see Seaman v. Private Placement Capital Notes II, LLC*, No. 16-

CV-00578-BAS-DHB, 2017 WL 1166336, at *4 (S.D. Cal. Mar. 29, 2017) (noting that "there is no requirement that the parties be sophisticated . . . before a court may conclude that incorporation of the AAA Rules is clear and unmistakable evidence of intent to arbitrate arbitrability" (citing *Brennan*, 796 F.3d at 1130-31)).   The parties' incorporation of the AAA rules therefore confirms that all threshold matters are properly decided by the arbitrator.  *See Cordas v. Uber Techs., Inc.*, No. 16-CV-04065-RS, __ F. Supp. 3d __, 2017 WL 658847, at *4–5 (N.D. Cal. Jan. 5, 2017) (holding that incorporation of AAA rules in consumer contract provided clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to an arbitrator); *Miller v. Time Warner Cable Inc.*, No. 16-CV-00329-CAS-ASX, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) (same).

Thus, any question as to the existence, scope, or validity of the parties' arbitration agreement must be left to the arbitrator to resolve in the first instance.  Indeed, another district court recently construed the exact same arbitration provision and fully "agree[d] with Hertz's argument that it must send the threshold matter of arbitrability to an arbitrator." *See Cooks v. Hertz Corp.*, No. 3:15-CV-0652-NJR-PMF, 2016 WL 3022403, at *4 (S.D. Ill. Apr. 29, 2016).  This Court should do the same.

## II.    All Of Plaintiffs' Claims Are Subject To Arbitration.

Should the Court nonetheless conclude that it must determine whether this dispute is arbitrable, the Court must decide two questions:  "whether a valid agreement to arbitrate exists," and (2) "whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  In answering these

questions, courts "apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (internal quotation marks omitted). In this case, both questions must be answered in favor of arbitration.

### A. A Valid Agreement To Arbitrate Exists Between Each Plaintiff And Hertz.

There can be no doubt that a valid agreement to arbitrate this dispute exists between each plaintiff and Hertz. In fact, such an agreement was created in multiple ways.

### i. Both Plaintiffs Agreed To Arbitrate Via The Gold Agreement and The Rental Records They Accepted In Connection With Their Rentals.

As plaintiffs agreed when they executed the Gold Agreement, their rentals are governed by the terms and conditions set forth in the Gold Agreement as well as the Rental Records plaintiffs accepted from Hertz during each of their rentals, including the November 25, 2014 and April 6, 2016 rentals at issue in this case. The Rental Records plaintiffs accepted on those dates included a prominent and explicit Arbitration Provision. The Arbitration Provision explained, in bold font and plain English, that each plaintiff was waiving his right to participate in a class action and to seek relief in a forum other than arbitration or small claims court (except for personal injury or property damage). *E.g.*, Zaenger Decl., Ex. 3, at 4; *id.*, Ex. 4, at 4; *id.*, Ex. 5, at 5. Hertz gave each plaintiff the opportunity to opt out of the arbitration provision and neither did so. Schloss Decl. ¶ 13. There is no basis now for plaintiffs to avoid this agreement to arbitrate.

Indeed, it is well-settled that arbitration is required where an executed contract – here, the Gold Agreement – expressly incorporates additional terms that contain an arbitration provision. *See Botorff v. Amerco*, No. 2:12-CV-01286-MCE, 2012 WL 6628952, at *5 (E.D. Cal. Dec. 19, 2012) (where plaintiff signed rental contracts that referenced a "Rental Contract Addendum," the arbitration clause located in that Addendum "was validly incorporated by reference into the rental contracts that Plaintiff signed and thus [was] enforceable against Plaintiff"); *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 998-99 (N.D. Cal. 2012) (holding that, where car rental agreement "specifically referenced [a] folder jacket" that included an arbitration provision, and "required [plaintiff] to agree that he accepted [the jacket's] terms and conditions and executed the car rental agreement in full conformity with them," the jacket was validly incorporated into the agreement); *Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N. Am., Inc.*, No. C-11-0052 EMC, 2011 WL 1086035, at *4 (N.D. Cal. Mar. 24, 2011) (holding that "by agreeing to the purchase order which effectively incorporated the General Terms and Conditions [containing the arbitration provision], [plaintiff] consented to it"). The contractual language incorporating the additional terms need not expressly refer to arbitration. *See Koffler*, 2011 WL 1086035, at *4 ("There is no authority requiring the defendant to specify that the incorporated document contains an arbitration clause in order to make the incorporation valid." (quoting *Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 788-89 (2003))).

Thus, by operation of the Gold Agreement, plaintiffs agreed to the prominent Arbitration Provision included in the Rental Records to which plaintiffs agreed to be bound.

13

### ii. Both Plaintiffs Are Bound By The Terms Of The Rental Records They Received In Connection With Their Rentals.

Even in the *absence* of the Gold Agreement, plaintiffs are bound by the terms of the Rental Records alone, including the Arbitration Provision. "[U]nder California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "Mutual assent may be manifested by written or spoken words, or by conduct, and acceptance of contract terms may be implied through action or inaction." *Id.* (internal quotation marks omitted). The task for the Court is to "determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Id.*

Plaintiffs unquestionably accepted the Rental Records and assented to their terms. Indeed, plaintiffs acknowledge that before they exited the Hertz rental lot, a Hertz agent directly handed them the Rental Records governing their rentals. Compl. ¶ 31. The first page of each Rental Record, which was visible to plaintiffs, contained the specific rental terms tailored to plaintiffs' individual rentals, including the rental rate, rental location, and products purchased. Zaenger Decl., Ex. 3, at 1; *id.*, Ex. 4, at 1; *id.*, Ex. 5, at 1. Those terms were clearly contractual in nature and put plaintiffs on notice that the Rental Records were contractual documents. Further, the Rental Records each stated clearly near the beginning of each document that "[f]urther information relating to Your rental charges, and other terms to which You agree, appear below." *Id.*, Ex. 3 at 2; *id.*, Ex. 4 at 2; Ex. 5, at 2. The end of each Rental Record similarly provided: "[b]y accepting the Car, You acknowledge

14

that You have read, understand, and agree to the above[.]" *Id.*, Ex. 3, at 5; *id.*, Ex. 4 at 5; *id.*, Ex. 5, at 6.   Each Rental Record further provided that plaintiffs could "opt out" of arbitration by providing notice within 30 days.  *Id.*, Ex. 3, at 4; *id.*, Ex. 4, at 4; *id.*, Ex. 5, at 5.  A reasonable person would have understood, as plaintiffs surely did, that if he proceeded with his rental by driving off the rental lot – i.e., if he "accept[ed] the Car" – that rental would be governed by the contract terms he had just received.  Thus, plaintiffs manifested their consent to their Rental Records and the conspicuous Arbitration Provision within them by accepting their Hertz rental vehicles and thereafter failing to opt out of arbitration within 30 days.

   *Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279 (9th Cir. 2017), is not to the contrary.  In *Norcia*, the Ninth Circuit held that a consumer was not bound by an arbitration provision contained in a document purporting to be a warranty brochure that was located inside the box containing a phone he had already purchased because he had not engaged in conduct showing that he agreed to be bound by it.  *Id.* at 1285, 1290.  The court explained that California's general rule is that "silence or inaction does not constitute acceptance," but that an exception to that rule exists where a "principle of California law" or a "previous course of dealing between the parties" impose a "duty to act."  *Id.* at 1286-87.  Unlike in *Norcia*, where the consumer was not on notice of the contractual nature of the document containing the arbitration provision and had no prior course of dealing with the defendant, *id.*, plaintiffs here were on notice of the contractual nature of the terms (by virtue of the Gold Agreement and the conspicuous Rental Record

15

terms) and had engaged in many similar transactions with Hertz.

Indeed, unlike in *Norcia*, where "the outside of the . . . box did not notify the consumer that opening the box would be considered agreement to the terms set forth in the brochure," *id.* at 1287, plaintiffs' Rental Records here explicitly stated that "[b]y accepting the Car, You acknowledge that You have read, understand, and agree to the above," Zaenger Decl., Ex. 3 at 5; *id.*, Ex. 4 at 5; *id.*, Ex. 5, at 6.  As the *Norcia* court explained, "[w]here a notice on a package states that the user agrees to certain terms by opening the package, a court could reasonably conclude, consistent with California contract law, that the user has a duty to act in order to negate the conclusion that the consumer had accepted the terms in the notice." *Norcia*, 845 F.3d at 1287.  So too here, plaintiffs accepted their Hertz rental cars and drove off the rental lot after receiving Rental Records that were contractual on their face and that informed them accepting the rental car would constitute agreement to the terms of the Rental Record.  Plaintiffs therefore had "a duty to act in order to negate the conclusion that [they] had accepted the terms in" the Rental Records.  *Id.*

In addition, the "previous course of dealing" between plaintiffs and Hertz also "impos[ed] a duty to act" on plaintiffs.  *See id.* at 1286 (citing *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650, 655 (Cal. Ct. App. 1960)).  Indeed, Olivas and Claassen each had a significant course of dealing with Hertz prior to the rentals at issue in this case.  Claassen had accepted 11 Rental Records containing the Arbitration Provision prior to his LAX rental.  Zaenger Decl. ¶ 8.  Similarly, Olivas had accepted over 35 Rental Records before his John Wayne Airport rental, the four most recent of which contained the

16

Arbitration Provision.  Zaenger Decl. ¶ 5.  Each of those Rental Records bore the same indicia of a contract as the Rental Records plaintiffs accepted in connection with their LAX and John Wayne Airport rentals.  And in fact, Olivas *hand-signed* two of those four Rental Records in connection with his Fort Lauderdale rental two weeks prior to his John Wayne Airport rental, demonstrating a direct awareness of the contractual nature of the document and of the Arbitration Provision it contained.  *See Rogers v. Nelson*, No. 16CV955-L (RBB), 2017 WL 1711155, at *3 (S.D. Cal. May 3, 2017) (explaining that "[r]easonable diligence requires the reading of a contract before signing it" (quotation marks omitted)); *Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 93 (2013) (noting that "the law effectively presumes that everyone who signs a contract has read it thoroughly").  Plaintiffs can hardly now argue that when the Rental Records governing their LAX and John Wayne Airport rentals were placed in their hands, they were unaware that they were contractual documents and contained an Arbitration Provision.  Their previous course of dealing with Hertz therefore imposed a duty to act in order to avoid being bound.  *See Norcia*, 845 F.3d at 1286.

Plaintiffs took no action to avoid being bound by the Rental Records and the Arbitration Provision therein.  Rather, they proceeded with their rentals and did not opt out of the Arbitration Provision, although they were authorized to do so for 30 days.  Plaintiffs therefore assented to the Rental Records and all of their terms, including the Arbitration Provision.  *See, e.g.*, *Schmidt v. Samsung Elec. Am., Inc.*, No. C16-1725-JCC, 2017 WL 2289035, at *4 (W.D. Wash. May 25, 2017) (applying California law and holding that, in

light of *Norcia*, a consumer's use of a phone he purchased manifested assent to an arbitration agreement located inside of a brochure inside of the phone box because the box stated that the device was subject to additional terms and conditions; the brochure was labeled "Important Information"; and the brochure contained a reference to arbitration in its table of contents and on its second numbered page).

### iii. Moises Olivas Directly Executed Two Rental Records Containing The Arbitration Provision.

Olivas also agreed to the Arbitration Provision in a third way.  As noted above, in connection with his November 8, 2014 rental from Hertz's Fort Lauderdale International Airport location, Olivas executed two Rental Records containing the Arbitration Provision. Zaenger Decl. ¶ 6; *id.*, Exs. 1-2.  Upon signing each Rental Record, Olivas unequivocally entered into a valid and binding agreement to arbitrate with Hertz.  *See Cooks*, 2016 WL 3022403, at *4 (holding that, where Hertz customer signed Rental Record containing Arbitration Provision, customer was bound by a valid and enforceable agreement to arbitrate); *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) ("[O]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.").  As discussed below, the Arbitration Provision is broad and applies to "any claims relating to any aspect of the relationship or communications between" Olivas and Hertz, not merely to specific transactions.

Thus, in sum, each plaintiff agreed to the Arbitration Provision by executing the Gold Agreement, accepting a Rental Record that included a conspicuous Arbitration Provision,

18

and failing to opt out of that Arbitration Provision within 30 days.  Further, there can be no dispute that Olivas personally executed Rental Records containing the broad Arbitration Provision.  The Arbitration Provision therefore must be "rigorously enforce[d]" as to both plaintiffs.  *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013).[7]

### B. The Arbitration Provision Covers All Of Plaintiffs' Claims.

All of plaintiffs' claims are subject to arbitration.  Where, as here, the parties have "clearly and unmistakably" agreed that the arbitrator should decide the validity and applicability of an arbitration provision, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985))); *Garcia*, 905 F. Supp. 2d at 1178-79 ("[T]he delegation provision of the Agreement should be enforced and any issue of enforceability should be decided by an arbitrator.").

In light of the language of the Arbitration Provision and the "presumption in favor of arbitrability," *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014), all

---

[7] The Arbitration Provision specifically waives any right "to participate in a class action, either as a class representative or class member."  *E.g.*, Zaenger Decl., Ex. 4, at 4 (capitalization omitted).  Both the Supreme Court and the Ninth Circuit have held that such waivers of an individual's right to participate in a class action are valid and enforceable. *See Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2306 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351-52 (2011); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 (9th Cir. 2012).  The class-action waiver therefore must be given effect, and arbitration must proceed on an individual basis.

of plaintiffs' claims fall within the scope of the Arbitration Provision.  The Provision expressly declares that it reaches "any disputes between us" and that its "scope is broad and includes, without limitation, any claims relating to any aspect of the relationship or communications between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory."  *E.g.*, Zaenger Decl., Ex. 4, at 4.[8]  Plaintiffs' claims are based in contract, statute, misrepresentation, and fraud – all types of claims specifically enumerated in the Arbitration Provision as expressly within its scope. Moreover, even if plaintiffs' claims did not fall within those categories, the Provision requires arbitration of "*any* claims" based in "*any* . . . legal theory."  None of plaintiffs' claims could be said to be exempt from that exceptionally broad provision.  Indeed, agreements to arbitrate "[a]ny dispute, controversy or claim" are "broad and far reaching," *Chiron*, 207 F.3d at 1131, and require arbitration of all disputes that "touch matters covered by the contract containing the arbitration clause," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

In any event, an agreement to arbitrate a particular dispute "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 F. App'x 740, 743 (9th Cir. 2012) (quoting *AT&T Techs., Inc. v. Commc'ns*

---

[8] The agreement exempts only "claims for property damage, personal injury or death."  *E.g.*, Zaenger Decl., Ex. 4, at 4.

*Workers of Am.*, 475 U.S. 643, 650 (1986)).  The Arbitration Provision is surely susceptible of such an interpretation here.

Accordingly, Hertz respectfully requests that the Court enter an order compelling arbitration.  Moreover, because *all* claims in the Complaint are subject to arbitration, Hertz requests that the Court dismiss the Complaint.  *See Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1074 (S.D. Cal. 2015).  In the alternative, however, Hertz requests that the Court stay the case pending arbitration pursuant to 9 U.S.C. § 3.

## **CONCLUSION**

For the foregoing reasons, Hertz respectfully requests that this Court enter an order compelling arbitration and dismissing, or in the alternative staying, this case.

21

Dated:  July 19, 2017                    Respectfully Submitted:

                                         By:   /s/ Kenneth K. Lee

                                         Kenneth K. Lee (CSB #264296)
                                         John F. Ward, Jr.*
                                         Daniel J. Weiss*
                                         Michelle R. Singer*
                                         JENNER & BLOCK LLP

                                         Attorneys for Defendant
                                         THE HERTZ CORPORATION

                                         *pro hac vice motion forthcoming